J-A29012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAVOY JULIN JENNINGS | : | |
| | : | |
| Appellant | : | No. 2095 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 17, 2019
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001877-2018

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 18, 2021**

Appellant, Savoy Julin Jennings, appeals from the Judgment of Sentence entered on October 17, 2019, after a jury convicted him of Criminal Use of a Communication Facility, Possession with the Intent to Deliver a Controlled Substance ("PWID"), and Delivery of a Controlled Substance.[1] We emphasize, however, that the jury found Appellant not guilty of Drug Delivery Resulting in Death ("DDRD") and Recklessly Endangering Another Person ("REAP").[2]

Appellant challenges the trial court's admission of evidence of two similar drug sales that occurred after the drug sale in this case. In addition, even though the jury found Appellant not guilty of DDRD, he still avers that

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 7512(a) and 35 P.S. § 780-113(a)(30), respectively.

[2] 18 Pa.C.S. §§ 2506(a) and 2705, respectively.

the trial court erred by preventing him from arguing during his closing argument that someone else caused Decedent's death. After careful review, we affirm.

On July 16, 2018, Appellant sold fentanyl to Jada Ferguson in Williamsport. Ferguson then shared the fentanyl with her friends Chelsae Mehalick and Michael Vivian ("Decedent"). Decedent immediately began showing signs of overdose. Ferguson did not want to take Decedent for medical attention because she and Decedent had outstanding warrants for arrest. Several hours later, Mehalick drove Decedent to a gas station where she requested help. Decedent had already died of a fentanyl overdose by the time emergency personnel arrived.

On November 2, 2018, police filed a criminal complaint against Appellant charging him with the above crimes. On November 16, 2018, the court released Appellant on bail.

On January 2, 2019, after his release on bail, Appellant sold fentanyl to an undercover police officer. Then, on February 22, 2019, Appellant sold fentanyl to a confidential police informant ("CI").

On August 26, 2019, the Commonwealth filed a Motion *in Limine* seeking a ruling on the admissibility of evidence of Appellant's subsequent drug sales pursuant to Pa.R.E. 404(b). The Commonwealth sought to introduce this evidence to establish Appellant's identity as the person who sold fentanyl to Ferguson. Appellant filed a Motion *in Limine* on the same day, opposing the

introduction of evidence of his subsequent drug sales. On September 3, 2019, the trial court granted the Commonwealth's Motion.

Appellant's jury trial started on September 9, 2019. Ferguson testified consistent with the above recitation of facts and identified Appellant as the person who sold her fentanyl. Appellant cross-examined Ferguson on her extensive criminal record and history of drug abuse.

The Commonwealth then introduced evidence of Appellant's subsequent drug sales. This evidence established that Appellant used the same nickname, method of communication, and packaging in fentanyl sales occurring on July 16, 2018, January 2, 2019, and February 22, 2019.

Finally, Appellant presented the alibi testimony of Melissa Hyden. Hyden alleged that she spent parts of July 15, 16, and 17, 2018, with Appellant in Phoenixville. Based on her testimony, Appellant argued, he could not have been in Williamsport to sell fentanyl to Ferguson on July 16, 2018.

The jury convicted Appellant of Criminal Use of a Communication Facility, PWID, and Delivery of a Controlled Substance. It found him not guilty of DDRD and REAP. On October 17, 2019, the court sentenced Appellant to an aggregate term of 3 to 7 years' incarceration.

Appellant filed a Post-Sentence Motion, which the trial court denied on November 22, 2019.

Appellant timely filed a Notice of Appeal, and both he and the trial court complied with Pa.R.A.P. 1925. Appellant raises two issues for our review:

1. Did the trial court commit an error of law by allowing [the Commonwealth to introduce] evidence of [Appellant's subsequent drug sales] pursuant to Pa.R.E. 404(b)?

2. Did the trial court commit an error of law by denying [Appellant's] counsel the opportunity to argue intervening circumstances relative to the death before the jury?

Appellant's Br. at 4.

Appellant's issues require us to consider the trial court's rulings on the admissibility of evidence. We review such determinations for an abuse of discretion. **Commonwealth v. Thompson**, 106 A.3d 742, 754 (Pa. Super. 2014). An abuse of discretion is "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality, as shown by the evidence of record." **Commonwealth v. Harris**, 884 A.2d 920, 924 (Pa. Super. 2005) (citations omitted).

Finally, "evidentiary rulings by a trial court which, in all likelihood, do not affect the verdict will not provide a basis for disturbing the jury's judgment." **Commonwealth v. Parker**, 882 A.2d 488, 495 (Pa. Super. 2005).

**Admission of Pa.R.E. 404(b) evidence**

In his first issue, Appellant challenges the trial court's admission of facts underlying his subsequent drug sales pursuant to Pa.R.E. 404(b). Appellant's Br. at 8-16.

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a

particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2). In a criminal case, this evidence is admissible only if its probative value outweighs its potential for unfair prejudice. *Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa. Super. 2014) (*en banc*).

Appellant first argues that evidence of his subsequent drug sales did not satisfy any exception to Rule 404(b)'s proscription on evidence of other crimes. Appellant's Br. at 12-16. The trial court explained that it admitted evidence of Appellant's subsequent drug sales to establish his identity as the person who sold fentanyl to Ferguson. Trial Ct. Op., 2/19/20, at 4.

Our Supreme Court has acknowledged that one of the recognized exceptions to the rule prohibiting evidence of other crimes is where the evidence establishes "the identity of the perpetrator when the crimes are so similar that logically the same person has committed both acts." *Commonwealth v. Rush*, 646 A.2d 557, 560 (Pa. 1994); Pa.R.E. 404(b)(2). When used to prove identity, the other crimes and the underlying crime must "share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant." *Commonwealth v. Weakley*, 972 A.2d 1182, 1189 (Pa. Super. 2009). "Sufficient commonality of factors between the other incidents and the underlying crime dispels the notion that they are merely coincidental and permits the contrary conclusion

that they are so logically connected they share a perpetrator." **Commonwealth v. Hicks**, 156 A.3d 1114, 1125 (Pa. 2017) (citation and quotation marks omitted).

Pennsylvania appellate courts have likewise recognized the probative value of evidence of after-occurring crimes to establish identity. **See Weakley**, **supra** at 1184-89 (permitting evidence of defendant's subsequent robbery to prove identity as perpetrator of robbery-murder eight months earlier); **Commonwealth v. Reid**, 626 A.2d 118, 121 (Pa. 1993) (permitting evidence that appellant used the same firearm in a subsequent murder to prove identity at trial for earlier murder).

In the instant case, the trial court explained that evidence of Appellant's subsequent drug sales was probative of his identity because "the actions of Appellant were nearly identical. In [all] sales of the fentanyl, he used the same name, and the same manner of delivery of the drug[, and] the same type of bag in distribution." Trial Ct. Op., at 4. "[S]uch evidence was highly probative in establishing the identity of Appellant, and there was clearly a logical connection between the two instances." **Id.**

After careful review, we agree. At trial, the Commonwealth established that, on July 16, 2018, Ferguson purchased fentanyl from a drug dealer she knew as "Vortex" by contacting him at a phone number ending in 5657, and through Facebook at a profile under the name "Vo Rt Ex." N.T. Trial, 9/9/19, at 182-83, 201-06. Vortex packaged the fentanyl in blue glassine baggies. **Id.**

The Commonwealth then presented Williamsport police detective Jonathan Rachael, police officer Cassandra McCormack, and a police CI. Their testimony established that Appellant sold fentanyl to an undercover police officer on January 2, 2019, and the CI on February 22, 2019. N.T. Trial, 9/10/19, at 186-87, 241. In both of these drug sales, Appellant went by the name "Vortex," and used the 5657 phone number and "Vo Rt Ex" Facebook profile to coordinate the sales. *Id.* at 182, 184-87, 222-32. He also packaged the same drug, fentanyl, in the same blue glassine baggies. *Id.* at 186-87, 221. The Commonwealth introduced video evidence of the drug sales and records of the communications between the CI and Appellant. *Id.* at 194-96, 215-18.

The similarities among the July 16, 2018, January 2, 2019, and February 22, 2019 drug sales comprise Appellant's virtual signature and make it highly unlikely that anyone other than Appellant sold fentanyl to Ferguson on July 16, 2018. This evidence was, therefore, probative of Appellant's identity. Since identity is one of the recognized exceptions to Rule 404(b)'s proscription on other crime evidence, Appellant's first challenge to this evidence fails.

Appellant also challenges the trial court's finding that the probative value of this other crime evidence exceeded its risk for unfair prejudice. Appellant's Br. at 10-11. He argues that such evidence was "particularly

prejudicial" because "the crimes alleged across both cases were practically identical to one another." *Id.* at 10.[3]

As stated above, when offered for a legitimate purpose, other crime evidence is admissible if its probative value outweighs its potential for unfair prejudice. *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015). Contrary to Appellant's assertion, such evidence's probative value is directly correlated to the similarity of the crimes in question. *Tyson*, *supra* at 361-62. Additionally, when conducting the probative value/prejudicial effect test, the court considers the strength of the other crime evidence and the Commonwealth's need for the evidence, including whether the defendant "sharpened" the issue by contesting the aspect of the case addressed by the other crime evidence. *Weakley*, *supra* at 1189; *Commonwealth v. Rozanski*, 433 A.2d 1382, 1388 (Pa. Super. 1981). Finally, a cautionary jury instruction can ameliorate the proffered evidence's prejudicial effect. *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014).

As discussed at length above, Appellant's subsequent drug sales were essentially identical to the crimes charged, giving this other crime evidence considerable probative value of Appellant's identity. Likewise, the other crime

---

[3] Appellant also argues that the other crime evidence prejudiced him because "at the time of trial [Appellant] stood merely accused of the offenses" and "they occurred after the conduct in the case for which he [was] being tried." Appellant's Br. at 11. However, as Appellant recognizes, "[Rule] 404(b) does not distinguish between prior and subsequent bad acts[] or uncharged/un-convicted conduct[.]" *Id.* (citing *Commonwealth v. Wattley* 880 A.2d 682 (Pa. Super. 2005), *Commonwealth v. Lockcuff*, 813 A.2d 857 (Pa. Super. 2002)).

evidence was reliable: the Commonwealth introduced convincing evidence through video, communication records, and the testimony of Detective Rachael, Officer McCormack, and a CI to show that Appellant committed the subsequent drug sales. N.T. Trial, 9/10/19, at 182-241.

Further, Appellant "sharpened" the identity issue by presenting his alibi defense to contradict Ferguson's identification testimony. The Commonwealth's need for the other crime evidence establishing identity, thus, supported the court's conclusion that its probative value outweighed its prejudicial effect.

Finally, the trial court ameliorated the prejudicial effect of the proffered evidence with its cautionary instruction. The court instructed the jury on the limited scope of its consideration of the other crime evidence and admonished that it could not consider the evidence as probative of Appellant's guilt. N.T. Trial, 9/11/19, at 247-48.

After balancing the above factors, we conclude that the trial court did not abuse its discretion in finding that the probative value of evidence of Appellant's subsequent drug sales outweighed its risk of prejudice.

**Closing argument**

In his second issue, Appellant claims that the trial court erred by preventing him from arguing in his closing argument that Ferguson's delay in getting Decedent medical care was an intervening circumstance that absolved Appellant of culpability for DDRD. Appellant's Br. at 20. However, the jury

found Appellant not guilty of DDRD.[4] Therefore, the court's prohibition of this argument did not contribute to the verdict and cannot form a basis on which to grant Appellant relief. **Parker**, **supra** at 495. As a result, Appellant's claim fails.

**Conclusion**

In sum, we conclude that the trial court did not abuse its discretion in admitting evidence of Appellant's subsequent drug sales. Further, the trial court's decision to limit Appellant's closing argument cannot provide a basis for relief.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/18/2021

---

[4] Appellant does not argue that Ferguson's delay in getting Decedent medical attention affected any of his convictions.